**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Phillip Chestnut McLAMB,
Defendant–Appellant.**

No. 92–5193.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 28, 1992.

Decided Feb. 10, 1993.

Roger William Smith, Tharrington, Smith & Hargrove, Raleigh, NC, argued, for defendant-appellant.

Thomas Ernest Booth, U.S. Dept. of Justice, Washington, DC, argued (Margaret P. Currin, U.S. Atty., Christine W. Dean, Asst. U.S. Atty., Raleigh, NC, Sidney M. Glazer, Crim. Div., U.S. Dept. of Justice, Washington, DC, on brief), for plaintiff-appellee.

Before WIDENER, PHILLIPS, and WILLIAMS, Circuit Judges.

OPINION

PHILLIPS, Circuit Judge:

Phillip McLamb raises several challenges to his convictions, following jury trial, on transaction structuring and money laundering charges arising out of two transactions connected with a car dealership he owns. We affirm.

I

In early July 1990 Harry Godwin contacted a salesman, M.L. "Bill" Stallings, at the Smithfield Ford–Lincoln–Mercury car dealership in Smithfield, North Carolina ("Smithfield Ford"), seeking to purchase a new Ford van for his girlfriend, Margie Jenkins. Godwin told Stallings he would pay cash for the van because both he and Jenkins had poor credit. Stallings selected a Ford Aerostar van for Jenkins and told McLamb, who owned the dealership, about the deal.

Jenkins purchased the van on July 5. She paid Stallings $13,927.79 in cash, which he took, together with the completed buyer's order, to McLamb. McLamb told Stallings the deal couldn't be done that way, wrote one receipt for $9,900 in cash and one for a $4,027.79 check, then told Stallings to make out a personal check to Smithfield Ford for $4,027.79. Stallings wrote the check, and McLamb gave him $4,028 in cash, which Stallings deposited in his checking account. McLamb then deposited Stallings's check and the $9,900 cash in the Smithfield Ford account. Jenkins later picked up the van, following its delivery from another dealership. No Form 8300 (reporting cash transactions exceeding $10,000) was filed with the IRS.

Somewhat later the IRS became aware that McLamb might be involved in money laundering activities, and on August 1 IRS Special Agent Anthony Asbridge, using a pseudonym and wearing a hidden tape recorder, negotiated the purchase of a Lincoln Towncar with McLamb. Discussing during the course of their negotiations Asbridge's professed desire to pay in cash, McLamb noted that he ran a "straight up business" but that "there are ways to do

that, that don't get anybody in trouble," J.A. at 233. "[I]t can be quite a serious problem," he said, "if you don't do it right." *Id.* Asbridge then explained to McLamb that his brother-in-law wanted to buy a Lincoln Towncar, but

> he just is in a situation right now where he can't buy it himself. He ... has problems ... with the drug people ... [T]he money's not clean money ... [H]e can't have a car in his name ... [W]e're dealing with green money, ... and ... one of the problems is all the reporting stuff ...

J.A. 233–34. McLamb told him that the "easy way," "the clean way" to work the transaction would be to pay roughly $9,000 in cash and finance the balance or purchase separate cashier's checks in amounts under $10,000 sufficient to cover the balance. Discussing his belief that this would enable him to avoid reporting the transaction, McLamb warned Asbridge that "if the IRS had ever questioned me, [sic] ... this conversation never existed!" J.A. at 240. But he agreed to proceed with the transaction, noting that although he was also obligated to report a transaction he knew was broken up to evade the reporting requirements, "you can't live by the letter of the law." *Id.* Asbridge and McLamb then moved on to a discussion of the car's particulars. Asbridge deferred decision on the actual purchase, saying he needed to consult his brother-in-law.

On August 2 Asbridge phoned McLamb and agreed to purchase a new Lincoln Towncar for $31,374.51, to be titled in the name of Bobbie Jeane Melton. While discussing the method of payment Asbridge would use, McLamb reminded him that purchases of cashier's checks for over $10,000 get recorded. The next day Asbridge brought about $7,000 cash and three sub–$10,000 cashier's checks to the dealership. After discussing the sale with McLamb, Asbridge helped the dealership's financial officer complete some paperwork, turning over the checks and telling him to title the car in the name of Bobbie Jean [sic] Mel-ton. When the financial officer told Asbridge the cash balance owed, Asbridge left the office, ostensibly to get the cash from his car. This signalled other IRS agents to execute a search warrant, which they did, entering the premises and seizing the dealership's records, including documentation of the transaction negotiated by Asbridge.[1]

McLamb was subsequently indicted on multiple charges arising out of these two transactions. The jury ultimately returned guilty verdicts on two of them, structuring the Ford van sale to Margie Jenkins for the purpose of evading the IRS reporting requirement in violation of 26 U.S.C. § 6050I(f)(1) and money laundering arising out of the sham transaction McLamb negotiated with Asbridge in violation of 18 U.S.C. § 1956(a)(3), on the basis of which the district judge sentenced McLamb to concurrent terms of 71 months and 60 months, respectively.

McLamb appealed.

## II

McLamb contests his conviction for structuring the van sale on three grounds, alleging insufficiency of the evidence, erroneous jury instructions, and improperly admitted evidence.

## A

McLamb argues that the government's evidence, which showed that he substituted Stallings's personal check for $4,027.79 of the Godwin–Jenkins cash, was insufficient to convict him under 26 U.S.C. § 6050I(f)(1) because it demonstrated that McLamb acted after the obligation to file a return had already arisen (with Jenkins's payment to Stallings) and therefore could not have "structured" the transaction to avoid the filing of a Form 8300. This misinterprets the statute's requirements.

Section 6050I(a) requires business-persons receiving more than $10,000 in one

---

1. This seizure led to the information used to prosecute McLamb for the Ford van transaction described earlier.

or more related transactions in the course of their business to file a return with the IRS. But McLamb was not charged with violating § 6050I(a); he was charged with violating § 6050I(f)(1). That section forbids individuals to "structure or assist in structuring" a business transaction or transactions "for the purpose of evading" the return requirement of § 6050I(a). The evidence was unquestionably sufficient for a reasonable jury to conclude beyond a reasonable doubt that McLamb did so, by assisting in structuring the transaction between Jenkins and McLamb's Smithfield dealership for the purpose of evading the obligation to file a Form 8300 return. The statute requires nothing more.

■ McLamb's contention that the obligation to report arose before he acted and applied to another individual is, even if correct, irrelevant to our determination that his conduct violated § 6050I(f)(1)(C). The statute's plain language indicates that the structuring prohibition's applicability is not limited to those on whom the duty to file falls and that a person's ability to structure a transaction for the purpose of evading the reporting obligation does not turn on when that obligation arises. That being so, we must reject McLamb's challenge to the sufficiency of the evidence used to convict him of structuring a transaction to evade IRS return requirements in violation of 26 U.S.C. § 6050I(f)(1)(C).

### B

McLamb also presses two objections to the district court's jury instructions on the structuring charge. Because McLamb failed to raise these objections at trial, we review the jury instructions against the background of the entire record for plain error prejudicing substantial constitutional rights. Fed.R.Crim.P. 52(a); *United States v. Young*, 470 U.S. 1, 14–16, 105 S.Ct. 1038, 1045–46, 84 L.Ed.2d 1 (1985).

McLamb's first objection centers on the district court's failure to inform the jury that "structuring" must precede the commencement of the reporting obligation;[2] because this objection rests on the improper construction of § 6050I(f)(1) rejected above, we must reject it as well.

■ McLamb also argues, however, that the district court's explanation of the obligation to file a return imposed by § 6050I(a) left unclear whether that obligation rested with McLamb or with the dealership. We need not address that contention directly, because the district court's instructions were flawed in a different way—one entirely favorable to McLamb—which rendered the instruction on the filing obligation altogether superfluous and any error in its formulation therefore harmless.

Count Four of the indictment charged McLamb with assisting in the structuring of a financial transaction with Smithfield Ford for the purpose of evading the transaction reporting requirement and with causing or attempting to cause the dealership to fail to file a required return, all in violation of § 6050I(f). The district judge outlined all this for the jury. Before detailing the elements of the offense, he explained that the return in question was required by § 6050I(a), which obligated persons engaged in business to report certain business-related transactions. He then discussed § 6050I(f), which McLamb was charged with violating. In doing so, he failed to reiterate at first that which he had outlined earlier in discussing the indictment, that § 6050I(f) forbade structuring a transaction to evade the reporting requirement as well as causing a business not to file a return, mentioning only the latter.

In summing up, the district judge did include the structuring possibility, but he made a further mistake in charging the jury that the government had to prove both the elements of the structuring offense *and* those related to causing a failure to file in order to convict McLamb. In reality, the portion of § 6050I(f)(1) under which McLamb was charged makes it clear that, while they require the same specific intent,

2. McLamb's related cavil at the district judge's use of the term "currency transactions" is without merit.

proof of either structuring *or* causing a failure to file will do; both are not required:

> [n]o person shall for the purpose of evading the return requirements of this section—
>
>> (A) cause or attempt to cause a trade or business to fail to file a return required under this section, ... *or*
>>
>> (C) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more trades or businesses.

(emphasis added).

It should be obvious from the text of the statute and the analysis in Part II.A that the question whether the district court properly instructed the jury with respect to the party on whom the filing obligation fell is relevant only to violation of § 6050I(f)(1)(A) and not to violation of § 6050I(f)(1)(C). Read in light of the district court's overly generous instructions, the jury's verdict demonstrates that it found all the elements for a violation of both provisions. Since McLamb's objection concerns an element relevant only to the offense of causing or attempting to cause a failure to file a required return under § 6050I(f)(1)(A), an erroneous instruction on that element would not impeach the jury's conclusion that the government proved each element of the structuring offense defined by § 6050I(f)(1)(C) beyond a reasonable doubt. Any error in the court's instruction on the filing obligation therefore was not of the "plain" variety, was indeed harmless, and McLamb's objection to the instruction cannot prevail.

### C

In his final attack on the structuring conviction, McLamb contends that the district court violated Fed.R.Evid. 404(b) by admitting similar acts evidence tending to show three vehicle purchases for which no transaction return was filed, each of which involved cash amounts under $10,000 coupled with personal checks and/or other bank instruments, also in denominations under $10,000. Since no such objection was raised at trial,[3] we once again review only for plain error. *United States v. Dunnigan*, 944 F.2d 178, 182 (4th Cir. 1991), *cert. granted on different issue*, —— U.S. ——, 112 S.Ct. 2272, 119 L.Ed.2d 199 (1992).

While Fed.R.Evid. 404(b) prohibits the introduction of evidence of other crimes, wrongs, or acts to show bad character or action in conformity with it, it permits the introduction of such evidence to show—among other things—knowledge or intent. The evidence in question must be relevant, necessary, and reliable, *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir.1988), but we have otherwise endorsed an inclusionary view of the rule which admits all similar acts evidence except that which proves nothing but criminal disposition. *United States v. Masters*, 622 F.2d 83, 85 (4th Cir.1980). In this case McLamb's plea of not guilty placed his state of mind directly in issue. If he in fact committed or ratified the similar acts, there can be little doubt that they are both relevant and necessary to the government's effort to demonstrate that McLamb had the necessary specific intent for the structuring and money laundering offenses. *See United States v. Mark*, 943 F.2d 444, 448 (4th Cir.1991).

In order to introduce this similar acts evidence, however, the government must demonstrate both that the acts occurred and that McLamb was the actor. *Huddleston v. United States*, 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988). In this case, the government undoubtedly proved the former, but its proof of the latter is more attenuated, and the admission of similar acts evidence where no such proof exists may constitute plain error. *See United States v. Vaught*, 485 F.2d 320, 323 & n. 3 (4th Cir.1973) (finding plainly erroneous the admission into evidence of a co-conspirator's pre-conspiracy criminal acts); *United States v. Rhodes*, 886 F.2d

---

**3.** McLamb did object at trial to the introduction of three of the seven exhibits in question, but his objection appears to have been based on lack of foundation, not impropriety under Fed. R.Evid. 404(b). J.A. at 30–33.

375, 382 (D.C.Cir.1989) (finding plainly erroneous admission of numerous similarly designed bad checks into evidence in a forgery case where the government could not link them to the defendant). Here there was no direct evidence demonstrating that McLamb structured the three additional transactions introduced into evidence. There was, however, considerable circumstantial evidence that made his participation in and ratification of the other structured transactions plausible. First, he played a documented role in two of the three similar transactions. Second, he told Special Agent Asbridge that he had structured other sales. And finally, there was substantial testimony that McLamb personally participated in an abnormally large number of dealership sales for an owner and frequently handled the proceeds from them personally. While none of this is conclusive, the role of the district court in these cases is limited to determining from all the evidence whether the jury could reasonably find that the defendant committed the similar acts by a preponderance of the evidence. *Huddleston,* 485 U.S. at 690, 108 S.Ct. at 1501. On the record presented here the district court's implicit conclusion that a jury could reasonably do so here was not plainly erroneous.

Evidence admissible under Rule 404(b) may nonetheless fail to surmount Fed. R.Evid. 403's injunction against admissibility where the likelihood of prejudice substantially outweighs probative value, but Rule 403 interposes no bar here because the likelihood of prejudice is minimal. The probability of a different outcome absent this evidence is not high, the similar acts alleged were no more serious than the crimes charged, and an appropriate limiting instruction was given. In such a case the district court's determination that the evidence's probative value was not substantially outweighed by the likelihood of prejudice, like the determination that McLamb probably committed the acts described by that evidence, cannot be labelled plainly erroneous. *See Dunnigan,* 944 F.2d at 182

(sustaining as not plainly erroneous the admission of tangential other crimes evidence where an appropriate limiting instruction was given).

## III

McLamb also challenges his conviction on money laundering charges arising out of his dealings with Special Agent Asbridge. His overriding contention is that 18 U.S.C. § 1956(a)(3), under which he was charged, is unconstitutional. And even if it is not, McLamb argues, his money laundering conviction, like his structuring conviction, was predicated on insufficient evidence and erroneous jury instructions.[4]

### A

McLamb insists that 18 U.S.C. § 1956(a)(3) is both unconstitutionally vague and an unconstitutional criminalization of harmless behavior in violation of the Due Process and Cruel and Unusual Punishment Clauses.

 Unless the exercise of protected First Amendment rights is impaired, we review vagueness challenges in light of the facts at hand. *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372 (1988). The limited restraints on McLamb's associational interests and ability to pursue lawful employment arguably imposed by this criminal regulation of economic activity are not constitutionally cognizable, *see Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 496–97, 497 n. 9, 102 S.Ct. 1186, 1192, 1192 n. 9, 71 L.Ed.2d 362 (1982) (associational and economic interests don't permit facial vagueness or substantive due process challenges), so we review § 1956(a)(3) solely to determine whether its application to McLamb's conduct violated the void-for-vagueness doctrine. *United States v. Gilliam,* 975 F.2d 1050, 1056 (4th Cir.1992); *United States v. Antzoulatos,* 962 F.2d 720, 726 (7th Cir.), *cert. de-*

---

**4.** McLamb also contests his conviction on the money laundering charge based on the allegedly improper admission of certain similar acts evidence. This contention was discussed and rejected in Part II.C above.

*nied,* —— U.S. ——, 113 S.Ct. 331, 121 L.Ed.2d 250 (1992).

 The void-for-vagueness doctrine requires that penal statutes define crimes so that ordinary people can understand the conduct prohibited and so that arbitrary and discriminatory enforcement is not encouraged. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The statute in question here provides that

> [w]hoever, with the intent—
>
> (A) to promote the carrying on of specified unlawful activity;
>
> (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
>
> (C) to avoid a transaction reporting requirement under State or Federal law,
>
> conducts or attempts to conduct a financial transaction involving property represented by a law enforcement officer to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph ..., the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

18 U.S.C. § 1956(a)(3). According to McLamb, the statute's requirement that the proscribed transaction involve "property represented by a law enforcement officer to be the proceeds of specified unlawful activity" is unconstitutionally vague. He argues that the statutory explanation of the term "represented"[5] is circular and therefore meaningless and that the meaning of the term "proceeds" within that explanation is unclear.

A moment's reflection on the full text of the statute, set out above, reveals that the statute's discussion of the term "represented," while poorly drafted, is neither circular nor meaningless. Though inartfully phrased, the sentence in question is undoubtedly intended not to *define* "represented," as McLamb contends, but simply to explain that the necessary representation of the proceeds' origin may be made by individuals who are not law enforcement officers as well as by the officers themselves, provided that the former are acting under the supervision of or with the approval of a federal official charged with the enforcement of this provision. Since an IRS Special Agent made the representations in this case, this provision isn't even implicated by McLamb's conviction.

The statute as applied to McLamb's conduct in this instance satisfies *Kolendar's* first requirement that an ordinary person be able to recognize the conduct in question as criminal. With respect to the challenged provision, there can be little doubt that Asbridge's statements to McLamb, recounted above, represented that the cash with which he proposed to buy the Lincoln Towncar was proceeds[6] of an unlawful activity specified in 18 U.S.C. § 1956(c)(7); any person of ordinary intelligence would have recognized it as such. No obvious danger of arbitrary enforcement is presented by this interpretation, so the second of *Kolendar's* two requirements is satisfied as well. Section 1956(a)(3) is not unconstitutionally vague as it applies to McLamb's conduct.

 McLamb's related contention that 18 U.S.C. § 1956(a)(3) unconstitutionally criminalizes harmless behavior must also be rejected. The money laundering statute forbids certain acts performed with a given specific intent, and where the legislature confines itself to the criminalization of acts with a required *mens rea* and does not attempt to outlaw a status or condition,

---

**5.** "For purposes of this paragraph, ... the term 'represented' means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section."

**6.** Despite McLamb's hopeful suggestion, there can be no doubt at all that cash from illegal drug transactions falls within the common understanding of "proceeds of specified unlawful activity."

neither the Constitution's ban on cruel and unusual punishment nor its guarantee of due process permit the courts to second-guess the legislature's determination that the proscribed conduct is harmful. *See Powell v. Texas,* 392 U.S. 514, 532, 88 S.Ct. 2145, 2154, 20 L.Ed.2d 1254 (1968) (plurality opinion of Marshall, J.) (upholding law criminalizing particular incidents of public drunkenness against cruel and unusual punishment challenge); *cf. Robinson v. California,* 370 U.S. 660, 667, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962) (invalidating criminalization of the status of narcotics addiction as cruel and unusual punishment); *Thompson v. City of Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) (upsetting loitering and disorderly conduct convictions for lack of evidentiary support in violation of due process). Without more, the mere facts that the government employs subterfuge to catch the criminal and that the crime can only be committed with the cooperation of a governmental actor are not constitutionally damning. *Jacobson v. United States,* —— U.S. ——, ——, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992); *United States v. Payne,* 962 F.2d 1228, 1235 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 306, 121 L.Ed.2d 229 (1992). Typical criminal conduct regulations need only be rational, and the proscription here effectively furthers the state's legitimate police power interest in eliminating money laundering activity by making it easier to ferret out.

### B

Even if we reject his constitutional challenge to the money laundering statute, McLamb argues, we must reverse his conviction for insufficiency of evidence because the government failed to prove there was a transaction as defined by the statute or that McLamb had conducted .it.

■ The first part of this contention turns on McLamb's equation of "financial transaction" with completed sale. In his view, the IRS agents' interruption of the Towncar sale before title and vehicle were delivered bars any finding that there was a transaction. We need not evaluate the validity of this equation, for the money laundering statute bans attempts to conduct

transactions as well as the completion of them, and the government certainly presented sufficient evidence for a reasonable jury to conclude that McLamb *attempted* to conduct a transaction with the required specific intent.

■ Conviction for attempt requires culpable intent and a substantial step toward the commission of the crime strongly corroborative of that intent. *United States v. Sutton,* 961 F.2d 476, 478 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 171, 121 L.Ed.2d 118 (1992). McLamb's statements to Asbridge during the course of their negotiations provide strong evidence that McLamb had the intent required by § 1956(a)(3)(B) to conceal or disguise the nature of property believed to be the proceeds of specified unlawful activity. *See United States v. Beddow,* 957 F.2d 1330, 1335 (6th Cir.1992)· (convoluted financial dealings satisfy similar intent requirement). His negotiations with Asbridge and his conduct on the day Asbridge arrived at the dealership ostensibly to pay for and pick up the car went far beyond mere preparation and were certainly substantial steps toward conducting a transaction, steps which strongly corroborate the necessary culpable intent, *see United States v. Loehr,* 966 F.2d 201, 203 (6th Cir.) (affirming automobile dealer's conviction for attempted money laundering based on partially completed transaction), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 582 (1992); to characterize McLamb, on this evidence, as a mere passive observer of these goings-on, would defy reason. The evidence was sufficient to support McLamb's conviction for money laundering in violation of § 1956(a)(3)(B).

### C

■ McLamb also contends that the district court erred in instructing the jury on the money laundering charge by omitting one of the elements of the crime from his summary. In explaining the charge to the jury, the district judge first read to them the indictment and the complete statutory language defining the offense. He then delineated for them the four essential elements of the offense, one of which was the requirement that the transaction involve

property "represented by a law enforcement officer to be proceeds of a specified unlawful activity," explaining that Asbridge's representations to McLamb were alleged by the government to satisfy this requirement. In his final summary, however, the district judge omitted this representation element:

> So, if you find that the government has proved beyond a reasonable doubt that defendant Phillip McLamb conducted or attempted to conduct a financial transaction which he believed involved proceeds from dealing in controlled substances, and that Mr. McLamb intended to conceal or disguise the source, ownership or control of the proceeds, then you should find the defendant McLamb guilty of Count Three ...

J.A. at 212.

McLamb raised no objection to this omission at trial, so once again we review solely for plain error. Failure to instruct on an element of the offense would typically constitute plain error, because it would deprive the accused of his substantial right to an instruction that includes every element of the offense which must be proved by the government beyond a reasonable doubt. *United States v. Polowichak*, 783 F.2d 410, 415–16 (4th Cir.1986). But McLamb got an instruction on every element; the question raised here is whether the district judge's *failure to reiterate* one of them in his summary constitutes plain error. We review erroneous instructions in light of the trial and the charge as a whole, *United States v. Park*, 421 U.S. 658, 674–75, 95 S.Ct. 1903, 1912–13, 44 L.Ed.2d 489 (1975), and viewed in that light we cannot say the district judge's failure to repeat this uncontested element constituted plain error affecting substantial rights.

## IV

None of McLamb's objections warrants a reversal of his convictions. For the foregoing reasons the district court's judgment is

AFFIRMED.