19 F.3d 1431
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Earl MARSHALL, Defendant-Appellant.
 No. 92-5649.
 United States Court of Appeals, Fourth Circuit.
 Submitted: March 8, 1993.
Decided: March 15, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge. (CR-91-195-C-CR-P)
 James G. Middlebrooks, Smith, Helms, Mulliss & Moore Charlotte, NC, for Appellant.
 Thomas J. Ashcraft, United States Attorney, Robert J. Conrad, Jr., Assistant United States Attorney, Charlotte, NC, for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before HALL and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 William Earl Marshall was convicted of conspiracy to possess with intent to distribute cocaine and heroin (21 U.S.C.A.Sec. 846 (West Supp.1993)), possession of cocaine and heroin with intent to distribute (21 U.S.C.A. Sec. 841 (West 1981 & Supp.1993)), and possession of a firearm during a drug trafficking offense (18 U.S.C.A. Sec. 924(c) (West Supp.1993)). He appeals his conviction and sentence. We affirm.
 
 
 2
 Marshall was registered in Room 121 at McDonald's Inn in Charlotte, North Carolina, and Nan Grimes had been staying with him for some days when an express mail package was mistakenly opened by the motel owner. The package contained heroin and cocaine. The sheriff was contacted, and drug task force officers arrived. Grimes had already made several inquiries about a package. After she inquired again at the desk, a motel employee was instructed to call Room 121. A male answered the phone and was told that the package was available. Grimes and Marshall soon entered the lobby at the same time. Grimes went to the desk and claimed the package while Marshall waited about ten feet behind her.
 
 
 3
 As Grimes began to walk away with the package, two officers who were stationed in the lobby stood up. Marshall looked at them and immediately walked out of the lobby. Two officers followed him, while Grimes was arrested and questioned in the motel front office. The officers stayed with Marshall as he walked past Room 121, paused, then took the elevator to the second floor. They explained who they were, asked whether they could speak to him, and asked his name and whether he was staying at the motel. Marshall asked why they wanted to talk to him, initially refused to give his name, and said he did not know Grimes and was not staying at the hotel but was there visiting friends. He would not identify his friends or say where they were staying. However, after stopping near Room 121, Marshall said his friends were on the second floor and took the elevator up. The officers rode the elevator to the second floor with Marshall. There Marshall said his name was "Eyes."
 
 
 4
 Officer Davis then arrived and told the others to arrest Marshall because Grimes had identified the man who came into the lobby with her as Marshall and said he had sent her to pick up the package for him. There was conflicting testimony from the officers later as to whether Marshall had given his last name and produced a driver's license in the name of William Marshall before or after Officer Davis gave the order for Marshall's arrest.
 
 
 5
 The key to Room 121 and a safety deposit box key were found on Marshall in the search incident to his arrest. Room 121 was later searched under a search warrant. In the room were an additional 5.7 grams of cocaine, 2.9 grams of heroin, four guns, triple beam scales, and $3,760 in cash, mainly twenty-dollar bills, which was in a boot. Marshall's safety deposit box contained $34,870 in cash, also mostly twenty-dollar bills.
 
 
 6
 Marshall moved to suppress all the evidence found on him and in the search of Room 121 on the ground that the officers detained him without reasonable suspicion when he left the lobby and later arrested him without probable cause. He also alleged that there was no probable cause for an arrest of Grimes, and thus evidence from the search of the room was excludable. The magistrate judge found first that Marshall did not have standing to contest the legality of Grimes's arrest and, second, that Marshall had been detained by the officers within the limits prescribed in Florida v. Royer, 460 U.S. 491 (1983), and Terry v. Ohio, 392 U.S. 1 (1968). Marshall objected to the second determination; reviewing it, the district court found that there had been no detention because the officers did not impede Marshall's freedom of movement or attempt to gain his consent for a search, and if there was a detention, it did not exceed the Royer limits.
 
 
 7
 Marshall contends on appeal that he was detained without reasonable suspicion before his arrest. We agree with the district court that, even if the officers's persistence in asking questions converted their surveillance of him into a detention, it was brief and was supported by reasonable suspicion. It was the perception of all the officers that Marshall had come into the lobby with Grimes, was waiting for her while she got the package, and left in a hurry when he detected the presence of police. Moreover, Marshall's actual arrest was based on information from Grimes which provided probable cause for arrest. Because Marshall did not contest the magistrate judge's determination that he lacked standing to challenge the arrest of Grimes, the district court did not rule on the issue. Therefore, Marshall has waived appellate review of it. 28 U.S.C. Sec. 636(b)(1)(B) (1988); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).[1]
 
 
 8
 During the trial, the government introduced as part of its case-in-chief evidence that Marshall had been convicted of felonious possession of heroin in 1982 in state court. Marshall argues here that admission of this evidence was an abuse of discretion because it was neither necessary nor relevant to an issue other than character, see United States v. Hernandez, 975 F.2d 1035 (4th Cir.1992); United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988), and it was more prejudicial than probative. Fed.R.Crim.P. 403.
 
 
 9
 This Court takes an inclusionary view of Rule 404(b) which allows admission of all similar acts evidence except that which proves nothing but criminal disposition. See United States v. McLamb, 985 F.2d 1284, 1289 (4th Cir.1993); United States v. Masters, 622 F.2d 83, 85 (4th Cir.1980). Although the prior conviction was ten years old and the circumstances were different,[2] Marshall placed his state of mind in issue by pleading not guilty. Thus, this evidence was both relevant and necessary to the government's effort to prove that Marshall, not Grimes, possessed the drugs in the motel room and intended to distribute them, and that he intended to possess the drugs in the package. McLamb, 985 F.2d at 1289. The likelihood of prejudice through admission of this evidence did not substantially outweigh its probative value because the government's case against Marshall was strong without it. Grimes testified against him, he lied about being registered in Room 121 (where the drugs were found), a large amount of cash was found in his boot in the room, and even more in his safe deposit box. Therefore, we find that the district court did not abuse its discretion in admitting the evidence of Marshall's 1982 conviction.
 
 
 10
 In computing his guideline range, the probation officer recommended that the court consider an upward departure from criminal history category IV under section 4A1.3[3] because Marshall had a 1964 conviction for common law robbery and would have qualified as a career offender if this conviction were not too old to be counted.
 
 
 11
 At the sentencing hearing, the government supplied additional reasons for a departure under section 4A1.3. It presented evidence that after his release from prison in 1984 Marshall had engaged in cocaine dealing with two large-scale dealers in the area, had personally shot one woman in the groin in 1988 and another in the chest in 1989, and had been involved in the fatal shooting of a third person. It requested that the court sentence Marshall as a career offender with a criminal history category VI and an offense level of thirty-four, which would have produced a guideline range of 262-327 months.
 
 
 12
 The district court decided that an upward departure was justified because Marshall was under indictment for another charge (murder) at the time of the offense, U.S.S.G. Sec. 4A1.3(d), and had engaged in prior similar conduct (drug dealing) which had not resulted in a criminal conviction, U.S.S.G. Sec. 4A1.3(e). The court noted that "[b]ut for two minor technicalities, [Marshall] would be considered a career offender." The court increased his offense level to thirty-two, which resulted in a guideline range of 168-210 months, and imposed a sentence of 210 months.
 
 
 13
 As Marshall points out on appeal, United States v. Rusher, 966 F.2d 868, 884 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S.1992), instructs a sentencing court to move to successively higher criminal history categories when departing under section 4A1.3 only after considering each in turn and explaining why it is inadequate. The district court did not take this approach. However, an alternative procedure is described in United States v. Cash, 983 F.2d 558, 562 (4th Cir.1992), whereby the district court may depart directly to the career offender guideline if it determines that a departure under section 4A1.3 is warranted and the defendant's prior conduct is sufficiently serious that he should be treated as a career offender. A sentence by way of analogy to the career offender sentence implicitly includes a finding that each lower criminal history category is inadequate to represent the seriousness of the defendant's criminal conduct. Id.
 
 
 14
 The sentence imposed here was tantamount to the sentence for a career offender with an offense level of thirty-two and a resulting guideline range of 210-262.[4] In light of the government's evidence that Marshall was involved in several prior shootings, we believe the analogy to a career offender was appropriately made.
 
 
 15
 Accordingly, we affirm Marshall's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 
 [1]
 Even if we were to review the propriety of Grimes's arrest, we would find it amply justified
 
 
 [2]
 In 1982, Marshall was stopped for erratic driving; he was found to be carrying a gun in one pocket and bags of cocaine and heroin in the other pocket
 
 
 [3]
 United States Sentencing Commission, Guidelines Manual (Nov.1991)
 
 
 [4]
 While the facts could have justified the government's request, it has not appealed the lesser sentence