25 F.3d 1041
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lewis BANKS, a/k/a Cornell Lewis, Defendant-Appellant.
 No. 93-5369.
 United States Court of Appeals, Fourth Circuit.
 Submitted: May 10, 1994.
Decided: June 14, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Florence. Dennis W. Shedd, District Judge. (CR-91-567)
 Jack B. Swerling, Columbia, South Carolina, for Appellant.
 J. Preston Strom, Jr., United States Attorney, Robert H. Bickerton, Assistant United States Attorney, Charleston, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before HALL and PHILLIPS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 
 OPINION
 PER CURIAM
 
 1
 Lewis Banks appeals from his jury convictions of various offenses related to his participation in a drug trafficking conspiracy. Two of Appellant's co-conspirators, Jones and McCutchen, pled guilty to the charges against them and testified against Banks at his trial. Because we find that the court did not err in denying Banks's motion to suppress evidence, in admitting testimony of other drug activity involving Banks, in denying Appellant's motion for a mistrial because of a comment by a DEA agent on information provided by Jones, or in admitting other items of evidence that Banks disputed, we affirm his convictions and sentences.
 
 
 2
 The evidence at trial established that Banks arranged for McCutchen to transport cocaine in her luggage on an Amtrak train trip from Florida to South Carolina. On the morning of McCutchen's departure from Florida, McCutchen aroused the suspicion of a Florida police officer who was conducting a routine narcotics surveillance at the Miami Amtrak station. The officer observed McCutchen board the train with a gray tweed suitcase and a blue vinyl suitcase. He also ascertained that her ticket was in the name of Cynthia Brown.
 
 
 3
 The Miami officer called Jacksonville authorities and provided them with a description of McCutchen; two Jacksonville officers proceeded to the Amtrak station and waited for the train. When the train arrived, the officers located McCutchen based on the description they received. She gave them her ticket in the name of Cynthia Brown and identification in the name of Gloria McCutchen. One officer asked to search her luggage, and she gave him the gray tweed suitcase. She stated it was her only bag. The blue bag was "misidentified" by another passenger, so the officers ended the search without opening it.
 
 
 4
 The Miami police officer also alerted authorities in the destination city in South Carolina. The train was under surveillance by law enforcement officers when it arrived in South Carolina. The officers observed a pick-up truck nearby occupied by two males; these men were later identified as the Appellant and Jones. When McCutchen disembarked from the train, Banks embraced her and took the gray tweed suitcase from her; it was the only bag she took off of the train. Banks carried the bag a few feet towards the truck before he set it down. At that point, a police officer approached McCutchen, identified herself, informed her that information had been received that she might be transporting drugs, and asked permission to search the luggage. McCutchen informed the officer that she had been searched before. Again, she produced the ticket for Cynthia Brown and identification for Gloria McCutchen.
 
 
 5
 Only one officer was in uniform; none drew their weapons. No one touched McCutchen, and there were no threats. One officer testified that he informed McCutchen that a "drug dog" could be brought to the scene, and the officers would obtain a search warrant to open the bag if the dog alerted to it. This same officer testified that McCutchen would have been free to leave if she had not consented to the search. The officers accompanied McCutchen into a waiting area, where they opened the bag and discovered a packaged kilo of cocaine and a plastic bag that contained two kilos of cocaine. At that point, the officers arrested Banks, Jones, and McCutchen. The officers also found crack cocaine residue in the truck and large sums of cash on Appellant and Jones.
 
 
 6
 Jones testified at trial that he purchased drugs from Appellant on several occasions and that Appellant gave him a beeper number, which he used on occasion to set up drug purchases. Jones also stated that he arranged for the delivery of a gold Nissan Pathfinder to Appellant registered in the name of John Bacote.
 
 
 7
 A fellow inmate of Appellant's, Gray, testified that Appellant told him that "the girl coming from Florida" named "Gloria" was "coming from Florida with some drugs that was coming up for him to sell." Appellant told Gray that he had been in the drug business in Florida for ten or eleven years.
 
 
 8
 Appellant first asserts that he had a reasonable expectation of privacy in McCutchen's suitcase "which contained his packages and which was in his possession when the officers first made the contact," and the district court therefore erred when it denied his motion to suppress evidence obtained in the officers' search of the suitcase. We agree with the district court's conclusion that Banks had no reasonable expectation of privacy in McCutchen's suitcase and therefore lacked standing to assert any Fourth Amendment claim in regard to its search.
 
 
 9
 The Fourth Amendment prohibits unreasonable searches of areas in which one has an expectation of privacy that society considers reasonable. United States v. Jacobsen, 466 U.S. 109, 113 (1984). Fourth Amendment rights are personal and may not be vicariously asserted; a defendant who does not have a legitimate expectation of privacy in the place invaded may not bring a Fourth Amendment challenge to its search. Rakas v. Illinois, 439 U.S. 128, 143 (1978); United States v. Rusher, 966 F.2d 868, 874 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S.1992).
 
 
 10
 McCutchen testified that she owned the suitcase, which contained her personal clothing along with the drugs. It contained no possessions belonging to Appellant. Banks handled the bag for only a few seconds at the train station, and he never asserted an ownership interest in it. Since he therefore had no privacy interest in the bag, Banks has no standing to challenge its search. See United States v. Manbeck, 744 F.2d 360, 373-74 (4th Cir.1984), cert. denied, 469 U.S. 1217 (1985).
 
 
 11
 As previously noted, one of Appellant's co-conspirators, Jones, testified as to drug transactions in which he engaged with Appellant in the months preceding dates charged in the conspiracy indictment. One of Appellant's fellow inmates testified that Banks informed him that "he had been in the drug business for approximately ten, eleven years or more." The court admitted the testimony over the objection of the defense.
 
 
 12
 Appellant asserts that this testimony was improperly admitted in violation of Fed.R.Evid. 404(b), which states that evidence of prior bad acts is not admissible to show character but may be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. The balancing test of Fed.R.Evid. 403 must also be undertaken to determine whether the probative value of the evidence outweighs its prejudicial effect.
 
 
 13
 This Court reviews admission of extrinsic act evidence for abuse of discretion. United States v. Mark, 943 F.2d 444, 447 (4th Cir.1991). A trial court's failure to specify the purpose for which prior acts evidence is introduced or to engage in on-the-record balancing of its probative value against undue prejudice is not reversible error. United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988). Evidence of prior bad acts is admissible if it is relevant to an issue other than character, is necessary, and reliable. United States v. McLamb, 985 F.2d 1284, 1289 (4th Cir.1993). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.
 
 
 14
 Since Appellant was charged with conspiracy to possess with the intent to distribute, the Government had to prove Appellant's specific knowledge and intent beyond a reasonable doubt. This Court has approved the admission of prior similar drug activity to prove intent and knowledge. See United States v. Mills, 995 F.2d 480, 485 (4th Cir.), cert. denied, 62 U.S.L.W. 3252 (U.S.1993); Mark, 943 F.2d at 448. Since Jones's testimony concerned his being supplied with crack cocaine in some months before and after the time period of the indictment, his testimony is related to the elements of Appellant's knowledge and intent. The evidence is also relevant to lack of mistake since one defense theory was that Appellant was innocently at the train station to pick up McCutchen (with whom he had a child), not to obtain drugs. The record also discloses that the court properly weighed the probative value of the evidence against its possible prejudicial effect.
 
 
 15
 As for Gray's testimony, the defense objected to its admission on the basis of relevance, not because it was a violation of Rule 404(b). This Court should not consider new issues on appeal unless the error is plain or if refusal would result in the denial of fundamental justice. Stewart v. Hall, 770 F.2d 1267, 1271 (4th Cir.1985). Given the other extensive evidence of Appellant's participation in the conspiracy, admission of Gray's testimony was neither plain error nor denial of fundamental justice. See United States v. Vogt, 910 F.2d 1184, 1192-93 (4th Cir.1990), cert. denied, 498 U.S. 1083 (1991).
 
 
 16
 Appellant alleges that the trial court erred in denying his motion for a mistrial when a DEA agent testified that in debriefing coconspirator Jones, he believed Jones provided "good information." The Government agreed to the court's striking that portion of the agent's testimony, which the court did. The court also instructed the jury "not to consider anything that this witness has said from the time he has retaken the stand until this point."
 
 
 17
 This Court reviews denial of a motion for a mistrial for abuse of discretion. United States v. Alonzo, 689 F.2d 1202, 1204 (4th Cir.1982). Before granting a mistrial, the court should always consider whether the giving of a curative instruction or some alternative less than a mistrial is appropriate. United States v. Martin, 756 F.2d 323, 328 (4th Cir.1985). Absent other indications of prejudice or evidence of intentional prosecutorial misconduct, an instruction by the court will normally cure any unfairness to a defendant. United States v. Moore, 710 F.2d 157, 159 (4th Cir.), cert. denied, 464 U.S. 862 (1983).
 
 
 18
 The agent's comment was brief and isolated. The court struck the testimony and gave the jury a curative instruction almost immediately. In addition, the comment did not directly relate to Banks's criminal conduct and it is unclear exactly what the agent meant by "good information." We therefore find that the court did not abuse its discretion in denying the motion for a mistrial on this basis. In addition, even if the court did err, we conclude that, on the facts of this case, it is "highly probable" that the agent's statement "did not affect the judgment." Vogt, 910 F.2d at 1193.
 
 
 19
 Banks also asserts that the court erred in admitting various items of evidence. Appellant first asserts that the court improperly admitted testimony that a "Curtis McCutchen"* was stopped in Georgia four months after Appellant's arrest while driving a gold Nissan Pathfinder that was registered to John Bacote. Jones had testified earlier that he conveyed to Appellant a gold Pathfinder registered in the name of John Bacote. The court determined that the testimony was admissible after a lengthy hearing. The court found that the evidence was responsive to defense attacks on Jones's credibility since it tended to corroborate his statements about the Pathfinder. The evidence was also probative in that it supported a connection between Appellant, Jones and Curtis McCutchen. Furthermore, if admission of the testimony was error at all, it was harmless in light of the other damaging evidence against Banks. See United States v. Urbanik, 801 F.2d 692, 698-99 (4th Cir.1986).
 
 
 20
 Appellant also asserts that the court improperly admitted testimony from Gloria McCutchen in regard to post-arrest statements Appellant made to her to influence her testimony and her cooperation with the Government. Though the defense did not object to the statements in question at the time, defense counsel explained to the court after a recess that he did not object because of pain he was feeling and his concerns about his health. He stated that, under normal circumstances, he would have objected to the testimony in question on relevancy grounds and because its prejudicial effect outweighed its probativeness. The defense also moved for a mistrial. The court considered the motion "made for the record," so it appears that the court considered defense objections timely. Thus, we find that this issue was preserved for appellate review.
 
 
 21
 Statements made by defendant in an improper attempt to influence a witness' testimony may be relevant to show the defendant's consciousness of guilt. United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir.1990), cert. denied, 499 U.S. 940 (1991). Therefore, the court did not err in admitting the testimony.
 
 
 22
 In addition, the defense did not object to testimony from Gray, Appellant's fellow inmate, who stated that the Appellant had him write letters for him and read his mail to him. Gray testified that Appellant wanted McCutchen to deny knowing him and directed her to destroy letters. He also stated that the subject of most of the letters was to get McCutchen "to go along with what he [Appellant] wanted her to go along with, which was she did not know him." Therefore, even if admission of the McCutchen testimony was error that was properly preserved for appellate review, most of the same information came in without objection through Gray. Thus, admission of this testimony, if error at all, was harmless. Urbanik, 801 F.2d at 698.
 
 
 23
 Appellant next asserts that the court improperly admitted testimony from Jones concerning a pager number that Jones used to contact Appellant. Jones testified that on one occasion, a third party, James, returned his page instead of Appellant. James informed Jones that he was answering Banks's calls because Banks was out of town. The defense objected to the testimony on hearsay grounds. The Government then established that the testimony was an admissible statement of a co-conspirator and elicited testimony from Jones that he called the number expecting to arrange a drug purchase with Appellant, but set up such an arrangement with James instead.
 
 
 24
 The defense then objected on the grounds that the testimony was not relevant. The court overruled that objection as well, and Jones went on to testify that he purchased a quarter or half ounce of crack from James. Jones also stated that he discussed James with Banks and that Banks stated James was "cool," which to him meant that it was "safe" to "conduct business" with him.
 
 
 25
 We find that the court did not abuse its discretion in admitting the testimony as statements from a co-conspirator under Fed.R.Evid. 801(d)(2)(E) since the evidence established there was a conspiracy involving Jones, James and Appellant and the statements were made in furtherance of the conspiracy. See United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir.1992). Furthermore, we find the testimony more probative than prejudicial because the transaction occurred when Jones called the pager number that Appellant provided him to arrange drug purchases. The prejudicial effect of the testimony was slight since Jones also testified that he purchased three to five ounces of crack per week from Appellant during the time period of the conspiracy. In light of that testimony, the impact of Jones's statement that he purchased one quarter ounce or one half ounce from James through his use of Jones's pager number was minimal. Even if admission of the testimony in question were error, it was harmless. See Urbanik, 801 F.2d at 698.
 
 
 26
 For these reasons, we affirm Banks's convictions and sentences. We dispense with oral argument since the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Curtis McCutchen is apparently Gloria McCutchen's brother