**UNITED STATES of America**

v.

**Kerry Christopher CANAVAN.**

No. Cr. S01–0232.

United States District Court,
D. Maryland.

Aug. 10, 2001.

Andrea L. Smith, Office of the U.S. Atty., Baltimore, MD, Barbara S. Sale, United States Attorney's Office, District of Maryland, Baltimore, MD, Stephen M. Schenning, United States Attorney, Baltimore, MD, for U.S.

Eric R. Delinsky, Office of the Federal Public Defender, Baltimore, MD, for Defendant.

### MEMORANDUM OPINION AND ORDER

SMALKIN, District Judge.

The Court has reviewed the motions recently filed by the defendant in this case,

in which the defendant is charged under the "sting" subsection of the money laundering statute, 18 U.S.C. § 1956(a)(3).

The Motion for Bill of Particulars is summarily *denied*, as the indictment adequately apprises the defendant of the charges against him so that he can prepare a defense, especially when viewed in conjunction with the government's burden to produce under Fed.R.Crim.P. 16 and applicable discovery practices in this District. *See, e.g., United States v. Bales*, 813 F.2d 1289 (4th Cir.1987).

The Motion to Dismiss the Indictment is also summarily *denied*.

■ It might well be that the statute in question specifically authorizes prosecution in a case where money or other monetary instruments move only intrastate and where the monetary instruments laundered are simply represented by Government agents to be proceeds of unlawful activity, but, obviously, these facts alone do not effect the constitutionality of the statute, if Congress has a jurisdictional basis for enacting it.

In order to be guilty of an offense under 18 U.S.C. § 1956(a)(3), the defendant must have conducted or attempted to conduct a "financial transaction." A financial transaction is one that "in any way or degree affects interstate or foreign commerce ... (ii) involving one or more monetary instruments...." 18 U.S.C. § 1956(c)(4). The term monetary instruments means, *inter alia*, "currency of the United States or ... personal checks...." 18 U.S.C. § 1956(c)(5).

In view of these definitions, in any case (and, of course specifically in this case, which charges that United States currency was laundered with checks), the jury would have to find an effect on interstate commerce, and it would be charged that such an effect is an element of the offense, because a "financial transaction" is not such unless it "in any way or degree affects interstate or foreign commerce." Thus, because it requires for conviction, as an element, proof of an effect on interstate commerce, the statute is plainly constitutional on its face.

■ Furthermore, it has long been understood that Congress has the undoubted power to regulate the use of United States currency, even where there is no effect at all on interstate commerce, in any way it sees fit, because the power to issue and regulate the use of currency is an enumerated power under the Constitution. U.S. Const., Art. I, § 8, cl. 5. This power includes "the power to protect the banking system." *United States v. Doherty*, 18 F.Supp. 793, 794 (D.Neb.1937). Obviously, as money laundering in general inexorably involves United States currency at some point, it may be regulated by Congress in all its manifestations, including "sting operations," which prophylactically protect the nation's monetary system.

Also, the utilization of personal checks or business checks, which by definition, are drafts drawn on banks, *see* U.C.C. § 3–104(f), necessarily involves, at some stage in the life of the check, the utilization of a bank, and banks are all plainly engaged in interstate commerce. *See United States v. Mejia*, 165 F.3d 919, 1998 WL 895380 at *6 (9th Cir.1998), *citing United States v. Ripinsky*, 109 F.3d 1436 (9th Cir.1997), *overruled on other grounds United States v. Sablan*, 114 F.3d 913, 916 (9th Cir.1997). Therefore, the statute is plainly constitutional under the commerce power as well as the currency power, not only because it requires the finding of an effect on inter-

state commerce, but also because Congress can properly regulate the use to which its currency is put, and other activities that affect banks.

The defendant's attack on the statute under the decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) is misplaced. First, both currency and banking activities are instrumentalities of interstate commerce, as they are part of the means by which interstate commerce is conducted, and modern interstate commerce could not be conducted at all without them. Thus, they fall within Congress's absolute regulatory power. *Lopez, supra*, at 558. Second, the laundering of currency, in the aggregate, obviously substantially affects interstate commerce, and many of these effects would not come to light were it not for "sting" operations. This is sufficient under *Lopez*, which, I note, has not been broadly construed by the Fourth Circuit, to say the least. *See, e.g., Gibbs v. Babbitt*, 214 F.3d 483 (4th Cir.2000), *cert. denied sub nom Gibbs v. Norton*, —— U.S. ——, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001) (regulation governing taking of red wolves on private land satisfies *Lopez*'s "substantially affects commerce" test).

Finally, the Court acknowledges that the defendant also attacks the statute on grounds foreclosed by the decision in *United States v. McLamb*, 985 F.2d 1284 (4th Cir.1993). That attack obviously is doomed in this Court by the *McLamb* decision, but it is preserved for review, having been duly raised, should the Fourth Circuit ever change its mind on *McLamb*.

The Government will answer the defendant's Motion for Disclosure of Confidential Informants within 21 days of the date hereof.