**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roland R. CHILDRESS, a/k/a Rocky,
Defendant–Appellant.**

**No. 92–5872.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 10, 1994.

Decided June 9, 1994.

**ARGUED:** Robert David Jacobs, Hershner & Jacobs, Richmond, VA, for appellant. Thomas E. Goodreid, Office of the U.S. Atty., Richmond, VA, for appellee. **ON BRIEF:** Helen F. Fahey, U.S. Atty., John G. Douglass, Asst. U.S. Atty., Richmond, VA, for appellee.

Before RUSSELL and WILLIAMS, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge RUSSELL wrote the majority opinion, in which Judge WILLIAMS joined. Judge OSTEEN wrote a concurring and dissenting opinion.

## OPINION

DONALD RUSSELL, Circuit Judge:

Roland Childress appeals from his convictions for kidnapping, in violation of the Federal Kidnapping Act, 18 U.S.C. § 1201(a)(1), and for using a firearm during the commis-

sion of a crime of violence, in violation of 18 U.S.C. § 924(c). Because we find no merit in Childress' arguments, we affirm.

### I.

At approximately 3:00 a.m. on May 31, 1992, Childress kidnapped Regina Retassie at gunpoint after breaking into her house with a hatchet and threatening to kill her and to kill himself. Childress drove Retassie from her home in Virginia, through Maryland, and into Pennsylvania on a two-day car trip.

Childress and Retassie had known each other since August 1989, when they began dating. From October 1991 to May 1992, Childress and Retassie lived together in the house from which Childress abducted Retassie. After a relationship marred by violence, Retassie told Childress on May 13, 1992 that she wanted to end the relationship and asked him to leave the house immediately.

Rather than comply with her request, Childress returned to Retassie's home on the morning of May 14, 1992, smelling of alcohol and carrying a razor which he displayed to Retassie. Childress took the keys to Retassie's car and demanded that she go with him. Childress also punched Retassie and knocked her head against a wall. Being familiar with Childress' history of drinking and violence, Retassie complied with his demands, but first called a friend to give a coded message to call the police. Childress took Retassie in her car and drove for a period, talking of killing her and killing himself. Shortly after Childress and Retassie returned, the police arrived; Childress left through the front door as the police arrived at the back door. Retassie did not see Childress again until the early morning hours of May 31.

The events of May 14, coupled with Childress' history of drinking and violence, left Retassie in fear. She telephoned her brother and moved out of her house, taking with her her ten-year-old son, Eric. After several days, Retassie moved back to her house because she needed to return to work but purchased a handgun for protection.

Retassie's fear increased when she received a warning call about Childress on May 29 from the girlfriend of Childress' brother. Retassie subsequently called the police and friends to come help her. The friends and police arrived and removed Retassie and her son from the house for the night. Unbeknownst to Retassie at that time, Childress was lying in the woods with a gun, watching as she left.

The next day, May 30, Retassie called Don Litton, a bounty hunter hired to apprehend Childress for jumping bail on unrelated pending charges. Litton joined Retassie when she returned home. At Litton's instruction, Retassie called Donald Hardesty, a friend of Childress, in an effort to locate him. Hardesty denied knowing Childress' location. At about 1:00 a.m. on May 31, Litton left Retassie and her son alone in her house.

Unbeknownst to Retassie, Childress had in fact been at Hardesty's house all day on May 30. He appeared there unexpectedly that morning and spent the whole day drinking. Childress carried a loaded .36 caliber revolver which he displayed to Hardesty. While he drank and handled the revolver, Childress talked about shooting Retassie and shooting himself. By midnight, Hardesty had fallen asleep; when he awoke on the morning of May 31, Childress was gone along with a hatchet and $40.00 in cash. The telephone cord had been forcibly yanked from the wall.

Childress left Hardesty's house sometime between 1:00 a.m. and 2:30 a.m. and drove toward Retassie's house. Instead of approaching the secluded house by the driveway, Childress parked on a nearby road and approached on foot through the woods. After lying in the woods and the rain watching Retassie's house, Childress made a move at 3:00 a.m.

Using Hardesty's hatchet to break through the rear door, Childress entered Retassie's house and proceeded to her bedroom. Retassie awoke to see Childress' shadow at her bedside, holding a gun. Childress threatened to kill Retassie and to kill himself. Fearing that any resistance might provoke Childress to violence, Retassie followed Childress' orders.

After taking Retassie's car keys, credit cards, and gun, Childress ordered Retassie

to get dressed. Armed with two loaded handguns, Childress then ordered Retassie to her car and drove away, never telling her their destination.

Childress drove north on Interstate 95 for several hours. Retassie, concerned about leaving her son unattended, asked Childress to stop the car so that she could telephone a friend and make arrangements for his care. Childress told Retassie that he would make the call after they had crossed the Maryland state line. After crossing into Maryland, Childress pulled off the highway and forced Retassie to get into the trunk of the car so that she would not try to escape while he made arrangements for Eric. After making the call and driving for a brief period, Childress released Retassie from the trunk and allowed her back into the car.

As the morning progressed and the alcohol wore off, Childress' demeanor began to change from "frightening" to merely "nervous." Record at 92. Attempting to lighten things up, Retassie humored Childress who seemed to be having second thoughts about what he had done. While driving on the Interstate in Maryland, Childress pulled out the two guns and handed them to Retassie; Childress still refused, however, to take Retassie home.

Exhausted and unsuccessful in attempting to convince Childress to return to Virginia, Retassie asked for a place to stop and Childress complied, taking her late in the afternoon of May 31 to a motel near Bedford, Pennsylvania. They purchased sandwiches in a convenience store across the street and returned to the hotel where Retassie bathed and slept until the following morning. Still "nervous," Childress spent much of the evening pacing in front of the window.

By the morning of June 1, Childress had decided to leave the motel and return to Virginia. Childress drove most of the day in a random fashion through rural areas of northern and central Virginia to avoid the police. At one point Childress telephoned Hardesty to ask him whether the police were looking for him. Finally, as night fell on June 1, Childress pulled off the road in a wooded area. Retassie fell asleep and awoke during the night to find Childress gone, with the keys still in the car. Retassie drove back to Virginia, to the home of a friend whom she believed was taking care of her son. Retassie arrived near dawn on June 2, exhausted and shaking.

Childress stayed in hiding until June 4, when the police arrested him. Upon his arrest, Childress gave a false name and social security number. Three days after his arrest, while in custody, Childress wrote a letter to Retassie in which he apologized for frightening and hurting her.

Childress was subsequently charged in a three-count indictment with kidnapping, use of a firearm during the commission of a crime of violence, and interstate transportation of a stolen vehicle. A jury convicted Childress of all three counts; Childress appeals his convictions for kidnapping and use of a firearm.

## II.

■ After the government presented its evidence, Childress made a motion for judgment of acquittal, contending that there was not sufficient evidence to support a conviction for kidnapping or for the use of a firearm during the commission of a violent crime.[1] Childress appeals from the district court's denial of this motion. In reviewing the denial of a motion for judgment of acquittal, we must, considering the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the government, determine whether any rational factfinder could have found the essential elements of the crimes charged beyond a reasonable doubt. *United States v. Sloley*, 19 F.3d 149, 152 (4th Cir.1994).

■ To sustain a conviction for kidnapping in violation of 18 U.S.C. § 1201(a)(1), the government was required to prove that Childress transported Retassie across a state

---

1. Because we affirm Childress' kidnapping conviction, we also affirm his conviction for use of a firearm during the commission of a violent crime because the kidnapping conviction is the predicate felony for the firearm conviction. 18 U.S.C. § 924(c). Childress makes no independent challenge to the firearm conviction.

line and did so without her consent. 18 U.S.C. § 1201(a)(1); *see Chatwin v. United States,* 326 U.S. 455, 464, 66 S.Ct. 233, 237, 90 L.Ed. 198 (1946) (noting that "the involuntariness of seizure and detention ... is the very essence of the crime of kidnapping"). Focusing on the consent element, Childress argues that, given Retassie's failure to seize arguable opportunities for escape while in Pennsylvania, a reasonable jury could not have concluded that she was an unconsenting victim of Childress' actions.

Childress' contention lacks merit. The evidence at trial, consisting of direct, eyewitness testimony of Retassie and supported by physical evidence and the testimony of other witnesses, clearly supports the conclusion that Childress' taking and transportation of Retassie was the violent act of a threatening and dangerous man, not the consensual "honeymoon" that Childress asked the jury to believe.

Moreover, evidence regarding Childress' own words and conduct during the days following the abduction confirm Retassie's account of a non-consensual kidnapping. For example, Retassie testified that on June 1, after Childress had finally agreed to take her home, Childress remained concerned about the police and thus drove on only back roads in rural areas. Childress' desire to avoid the police was confirmed by the testimony of Hardesty that Childress had telephoned him twice to find out whether the police were looking for him. Finally, upon learning that he was wanted by the FBI, Childress stole a car and fled to Mississippi. When the Mississippi police located him, Childress hid under a house and even used a false name and social security number to avoid arrest. These actions clearly are not those of an innocent man after a consensual pleasure trip with his girlfriend.

Finally, even if Retassie had consented to Childress' conduct as Childress contends, that consent would not eliminate the crime

that Childress had already committed. Specifically, at the time Retassie allegedly consented to Childress' conduct, Childress had already taken Retassie from her home at gunpoint, threatened to kill her, and crossed the Maryland border.

We accordingly find that the government presented sufficient evidence from which the jury reasonably could have concluded that Childress kidnapped Retassie without her consent. We therefore affirm the district court's denial of Childress' motion.[2]

### III.

◼ When instructing the jury regarding the elements of kidnapping, the district court stated that the government was not required to prove "that a kidnapping was carried out for ransom or personal monetary [gain] so long as it is proved that the accused acted willfully." Record at 360. Childress raised no objection to this charge either at trial or on appeal. The dissent nevertheless contends that the district court's instruction is plain error, *see* Fed.R.Crim.P. 52(b), because it omits as an element of the offense the Federal Kidnapping Act's requirement that one hold the victim "for ransom or reward or otherwise." 18 U.S.C. § 1201(a). We disagree.

◼ Under *United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), we will exercise our discretionary remedial power to correct only: 1) an error; 2) which is plain; 3) which affects substantial rights; and 4) which seriously affects the fairness, integrity or public reputation of judicial proceedings. *Olano,* at —— —— ——, 113 S.Ct. at 1777–79. We need not go beyond the first step of the *Olano* analysis, however, because the district court committed no error when it instructed the jury that the government only had to prove that Childress "acted willfully."[3]

---

**2.** Childress also argues on appeal that the district court abused its discretion when it refused to exclude evidence of the May 14, 1992 incident at Retassie's home and when it refused to include in the written jury instructions oral modifications it made when it read the instructions to the jury.

We have considered these arguments and find them to be without merit.

**3.** We assume, for purposes of this discussion, that the Federal Kidnapping Act's requirement that one hold the victim "for ransom or reward or otherwise," 18 U.S.C. § 1201(a), constitutes

As originally enacted, the Federal Kidnapping Act applied only if the kidnapped person was "held for ransom or reward." *Brooks v. United States*, 199 F.2d 336, 336 (4th Cir. 1952). In 1934 the statute was amended to extend its coverage to interstate transportation of kidnapped persons "held for ransom or reward or otherwise." *Id.* at 336–37. The report of the Senate Judiciary Committee stated that the purpose of this amendment was to extend the statute's reach "to persons who have been kidnaped and held, not only for reward, but *for any other reason.*" S.Rep. No. 534, 73d Cong., 2d Sess. 1 (1934) (emphasis added). The House Judiciary Committee report contains an identical statement. H.R.Rep. No. 1457, 73d Cong., 2d Sess. 2 (1934).

■ Given this legislative history, the Supreme Court and the courts of appeals have broadly interpreted the Federal Kidnapping Act's requirement that the kidnapped person be "held for ransom or reward or otherwise." *United States v. Crosby*, 713 F.2d 1066, 1070 (5th Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983). Thus, to satisfy the Act's requirement, it is sufficient for the government to show that the defendant acted for *any* reason which would in *any* way be of benefit. *Gooch v. United States*, 297 U.S. 124, 128, 56 S.Ct. 395, 397, 80 L.Ed. 522 (1936) (quoting with approval H.R.Rep. 1457, 73d Cong., 2d Sess. 2 (1934) in body of opinion). And, of course, when charging a jury regarding the controlling legal principles in a case, a trial judge may couch his instructions in his own language so long as he clearly and correctly states the law. *E.g., Beaty Shopping Ctr., Inc. v. Monarch Ins. Co. of Ohio*, 315 F.2d 467, 471 (4th Cir.1963); *United States v. Goldblatt*, 813 F.2d 619, 623 (3d Cir.1987).

Here, the district court judge instructed the jury that, to fulfill the Federal Kidnapping Act's requirement that the kidnapped person be "held for ransom or reward or otherwise," the government had to prove that Childress "acted willfully" when he seized and detained Retassie. Record at 360. The district court defined the term "willfully" to mean "that the act was committed voluntarily and purposefully with the specific intent to do something the law forbids." Record at 359. Given the Supreme Court's broad interpretation of the phrase "ransom or reward or otherwise" to encompass *any* reason motivating the kidnapper's conduct, we find that the district court's use of the term "willfully" is not error.

When one acts "purposely with the specific intent to do something the law forbids," one's acts must necessarily be the result of *some* reason. The district court's use of "willfully" thus adequately informed the jury regarding the "ransom or reward or otherwise" requirement of the Federal Kidnapping Act. We accordingly find no error in the district court's instruction.[4]

. ■ Finally, we note that our discretion to correct plain errors is limited to only those cases involving errors so egregious that they

---

an element of the federal kidnapping offense. While the dissent cites decisions by the United States Supreme Court and this Court arguably supporting this position, this Court and several other courts of appeals have indicated that the requirement that a kidnapped person be held "for ransom or reward or otherwise" is not an element of the federal kidnapping offense. *United States v. Martell*, 335 F.2d 764, 766 (4th Cir. 1964) (holding that the federal kidnapping statute is violated "regardless of the ultimate purpose of the kidnapper"); *Gawne v. United States*, 409 F.2d 1399, 1402–03 (9th Cir.1969) (holding that a kidnapper's motivation is not an element of the federal kidnapping offense), *cert. denied*, 397 U.S. 943, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970); *Clinton v. United States*, 260 F.2d 824, 825 (5th Cir.1958) (holding that the Federal Kidnapping Act does not make the kidnapper's motivation an "ingredient of the crime"), *cert. denied*,

359 U.S. 948, 79 S.Ct. 731, 3 L.Ed.2d 681 (1959); *see Hayes v. United States*, 296 F.2d. 657, 665–67 (8th Cir.1961), *cert. denied*, 369 U.S. 867, 82 S.Ct. 1033, 8 L.Ed.2d 85 (1962). Because the district court did instruct on this element here, however, we leave the resolution of this potential conflict for another day.

4. Further, we note that even if the district court's instruction were error, we would nevertheless decline to find that that error is plain, given the potential conflict in precedent discussed, *supra*, in footnote 3. " 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' ... At a minimum, the Court[s] of Appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Olano*, — U.S. at —, 113 S.Ct. at 1777.

necessarily undermine the fundamental fairness of the trial or contribute to a miscarriage of justice. *Olano,* —— U.S. at ——, 113 S.Ct. at 1779; *see United States v. Xavier,* 2 F.3d 1281, 1287 (3d Cir.1993) (holding that failure to instruct on an essential element constitutes plain error only where it produces a miscarriage of justice) (cited favorably in *United States v. Rogers,* 18 F.3d 265, 268 (4th Cir.1994)). The equities in this case do not warrant the exercise of our discretionary power. The error here, if there is one, is a quibbling disagreement with how the district court instructed the jury that there must be *some* reason for Childress' kidnapping. Given the overwhelming evidence of Childress' guilt presented at trial, we do not believe that the district court's instruction could have undermined the fundamental fairness of Childress' trial or resulted in a miscarriage of justice. We therefore decline to exercise our discretional remedial power to correct the assignment of error raised *sua sponte.*

For the foregoing reasons, the judgment of the district court is hereby

*AFFIRMED.*

OSTEEN, District Judge, concurring in part and dissenting in part:

Although I concur with my distinguished colleagues that this case must be affirmed on the issues raised by the defendant, I must respectfully dissent on an issue raised *sua sponte* during my review of the case and put to the parties during oral argument. During its instructions to the jury, the district court failed to instruct on an essential element of the kidnapping charge against Mr. Childress. Because this failure was not an isolated incident that was cured by other instructions, I believe that it constitutes the type of plain error that results in a miscarriage of justice. Thus, I would reverse the conviction and remand the case for a new trial.

The federal kidnapping statute, 18 U.S.C. § 1201(a), provides in relevant part that "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person ... when: (1) the person is willfully transported in interstate or foreign commerce ... shall be punished by imprisonment for any term of years or for life." In addition to the interstate commerce requirement, the essential elements of the offense, as defined by Devitt & Blackmar, are first, that the defendant knowingly and willfully seized, confined, kidnapped, abducted, or carried away a person; and second, that the defendant held that person for ransom, reward, or other benefit or reason. 2 Edward J. Devitt et al., *Federal Jury Practice and Instructions: Criminal* § 39.03 (4th ed.1990). Decisions by both the United States Supreme Court and this Court support this position. *Chatwin v. United States,* 326 U.S. 455, 459, 66 S.Ct. 233, 235, 90 L.Ed. 198 (1946); *United States v. Lewis,* 662 F.2d 1087, 1088 (4th Cir. 1981), *cert. denied,* 455 U.S. 955, 102 S.Ct. 1464, 71 L.Ed.2d 672 (1982); *see also United States v. Young,* 512 F.2d 321, 323 (4th Cir.1975) (noting that "it is clear that Congress has made unlawful much more than strict kidnapping as defined at common law"), *cert. denied,* 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976). "The phrase 'and holds for ransom or reward or otherwise' means to detain a person for anything that the individual who is holding that person feels is of benefit or has value. Such benefit is not limited to money or any measurable or material item." Devitt et al., *supra,* § 39.05. Thus, the government must prove beyond a reasonable doubt that the defendant acted for some reason that would benefit him in any way. *See Gooch v. United States,* 297 U.S. 124, 128, 56 S.Ct. 395, 397, 80 L.Ed. 522 (1936).

The jury in this case was not so instructed. Instead, they were told that

[i]n order for the defendant to be found guilty of [kidnapping], the government must prove each of the following elements beyond a reasonable doubt. First, that the defendant knowingly and willfully seized, kidnapped, or carried away the victim, Regina Retassie; second, that such person was thereafter transported in interstate commerce while so seized or kidnapped. Third, that these acts were done willfully. To kidnap a person means to forcibly and unlawfully hold, keep, detain, and confine the person against her will. So [involun-

tariness] or coercion in connection with the victim's seizure and detention is an essential element of the offense. It need not be proved, however, that a kidnapping was carried out for ransom or personal monetary again [sic] so long as it is proved that the accused acted willfully.

(J.A. 359–60.) The court had previously instructed the jury that "willfully" meant "that the act was committed voluntarily and purposefully with the specific intent to do something the law forbids. That is, to say with bad purpose, either to disobey or to disregard the law." (J.A. 359.)

It is clear from the above instruction that the jury was not explicitly instructed that the government had to prove that Regina Retassie was held for ransom, reward, or some other benefit or reason. In fact, the court effectively told the jury quite the opposite, that the government did not have to prove that element. Although it is true that the purpose of the kidnapping does not have to be ransom or reward, *United States v. Healy,* 376 U.S. 75, 81, 84 S.Ct. 553, 557, 11 L.Ed.2d 527, (1964), the government must nevertheless show *some* benefit to the defendant from the kidnapping, whether it be for the purpose of assisting escape, silencing a potential witness, extorting information, even sexual gratification. *See Young,* 512 F.2d at 323 (assisting escape); *United States v. Satterfield,* 743 F.2d 827, 850 (11th Cir.1984) (silencing witness), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985); *Matter of Extradition of Suarez–Mason,* 694 F.Supp. 676, 686 n. 11 (N.D. Cal.1988) (extortion); *United States v. McBryar,* 553 F.2d 433, 434 (5th Cir.) (sexual gratification), *cert. denied,* 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977). By not mentioning this point, the district court in this case relieved the government of its burden of proof on an element of the offense. *See United States v. Merkt,* 764 F.2d 266, 272 (5th Cir.1985) (observing that government's problems of proof do not warrant instruction that removes essential element of offense from jury's consideration).

Because the defendant's counsel failed to object to the instruction as given by the court, this Court may order a new trial only if the error amounts to plain error under Fed.R.Crim.P. 52(b). That rule enables appellate courts "to correct 'those errors that "seriously affect the fairness, integrity, or public reputation of judicial proceedings,"' but only if those errors are '"particularly egregious."'" *United States v. Mitchell,* 1 F.3d 235, 239 (4th Cir.1993) (citations omitted). That is to say, the doctrine should only be applied when "the error was 'such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice.'" *Id.* at 240. However, when the error involves the omission of an element of an offense from the jury charge, this Court has stated that such a failure to instruct "*would typically* constitute plain error, because it would deprive the accused of his substantial right to an instruction that includes every element of the offense which must be proved by the government beyond a reasonable doubt." *United States v. McLamb,* 985 F.2d 1284, 1293 (4th Cir.1993) (emphasis added). My review of the erroneous instruction, within the contexts both of the charge as a whole and the entire trial, *id.,* leads me to believe that the plain error standard, strict as it is, has been met in this case.

To begin, at no point in the court's charge to the jury was the jury told that it must find that the defendant received some benefit from the kidnapping before it could convict. Thus, this case stands in strong contrast to this Court's recent *McLamb* decision, in which it was found that the district court did not commit plain error in failing to include an element of the offense in its summary when it had previously read to the jury both the indictment and the statute, and had also previously and correctly spelled out all of the essential elements. *Id.* at 1292–93. It is true that in the instant case the district court did read the statute to the jury immediately before listing the elements of it, and that the statute did include the phrase "ransom, reward, or otherwise." This Court has held, however, that an omission of an element in a jury instruction is not cured by a reading of the statute to the jury. *United States v. Harris,* 346 F.2d 182, 184 (4th Cir.1965).

Additionally, the failure to instruct the jury on the specific element that the kidnapping was done for ransom, reward, or other benefit or reason was not and cannot be cured by a charge that the kidnapping was done willfully, that is, voluntarily and pur-

posefully with the specific intent to do something the law forbids, with bad purpose either to disobey or to disregard the law. That substitute, at best, is not as extensive as the required element. At worst, it is simply no substitute at all. Clearly, doing an act with the bad purpose of disobeying or disregarding the law is not interchangeable with doing the act to gain some benefit for oneself.

Furthermore, a review of the trial as a whole reveals that the error in the jury instruction was not an isolated incident. *See Mitchell,* 1 F.3d at 239–40. In fact, quite the opposite is true: The instruction represents the culmination of a series of events, each one building upon and compounding the one before. At the outset, the indictment did not charge that the kidnapping victim was held for ransom, reward, or otherwise. Next, there were no preliminary instructions to aid the jury in understanding the evidence. Consequently, when the government misstated the elements of the kidnapping in its opening statement,* the jury could not know that the government was wrong, and had no reason to look for evidence of any benefit to the defendant in carrying out the kidnapping.

Prior to the charge conference, each side submitted proposed instructions. The instructions on kidnapping submitted by the defendant followed exactly the pattern instructions laid out in the standard source, Devitt & Blackmar, including the instruction on "and held for ransom, reward, or otherwise" quoted above. In contrast, although purporting to base its proposed instruction on Devitt & Blackmar, the government omitted the "benefit" element. Instead, it substituted the element "that these acts were done willfully," without, however, citing a source to support this substitution. At the brief charge conference, the judge stated,

It is going to be simple. You don't have any big disagreements, and let's just move through [the instructions] swiftly. We have got the opening.... Then we get to

Count One, the [statute], then the elements, you all can look at that, but I don't think there is any disagreement about anything here. Then we have got Count Two....

(J.A. 347.)

In its closing argument, the government once again misstated the elements of the kidnapping charge against Mr. Childress.

Count One is the kidnapping charge and it simply requires you to find that the victim was taken against her will and transported across a state line. That's the crime. It doesn't require ransom. You will hear the instruction. For ransom, reward, or otherwise. [Otherwise] is anything. So ransom is not an element in the kidnapping charge. All you have to find is that Regina Retassie was taken against her will and was taken across a state line and the crime is complete the minute they cross the state line of Virginia into Maryland.

(Tr. 381.) Therefore, when the court finally gave its instructions (following almost verbatim the proposed instruction submitted by the government), those instructions only reiterated what the jury had already heard. As a result, not once during Mr. Childress' trial did the jury hear a full and accurate statement of what it was required to find before it could convict him of kidnapping.

Finally, the fact that there was some evidence in the government's case to support the missing element does not excuse or cure the omission: The error is not remedied merely because an appellate court, upon review, is satisfied that the jury would have found the essential elements had it been properly instructed. *United States v. Voss,* 787 F.2d 393, 398 (8th Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986). This is so even when the evidence is quite strong, or even wholly uncontested. *United States v. Natale,* 526 F.2d 1160, 1167 (2d Cir.1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976); *United States v. King,* 521 F.2d 61, 63 (10th Cir.

---

* The government told the jury:

The indictment charges three crimes. There are three counts to the indictment. Counts One, Two, and Three. Count One charges kidnapping, and that is simply the taking of a person, the victim here, Ms. Retassie, against her will. And it is a federal crime. That

means when you transport the person across a state line. In this case, the transportation was from Virginia into the State of Maryland, and then into the State of Pennsylvania.

Count Two charges the carrying and using of a firearm....

(Tr. 6.)

1975), *overruled on other grounds by United States v. Savaiano,* 843 F.2d 1280 (10th Cir. 1988); *Byrd v. United States,* 342 F.2d 939, 941 (D.C.Cir.1965).

The majority declines to find error in the instructions given to Mr. Childress' jury on the ground that a kidnapper's motivation is not an element of the offense. I would agree with this proposition: A showing of motivation is not required by the federal kidnapping statute. What *is* required is a showing of benefit to the kidnapper. I note merely that motivation and benefit, although they may frequently overlap in a given case, are nonetheless separate and distinct concepts. Further, even if motivation and benefit were conceptually the same, the cases relied upon by the majority have been, at the least, called into question, if not seriously undermined, by more recent decisions—including opinions issued by this Court. *See, e.g., United States v. Lewis,* 662 F.2d 1087, 1088 (4th Cir.1981), *cert. denied,* 455 U.S. 955, 102 S.Ct. 1464, 71 L.Ed.2d 672 (1982).

For the foregoing reasons, I believe that the defendant is entitled to a new trial. Therefore, I dissent.